UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

CASEY WASSERMAN LIVING          )
TRUST UNDER DECLARATION OF      )
TRUST DATED JUNE 29, 1999       ) Civil Action No. 5:09-CV-180-JMH
                                )
and                             )
                                )
WASSERMAN MEDIA GROUP LLC,      )
                                ) **MEMORANDUM OPINION AND ORDER**
        Plaintiffs,             )
                                )
                                )
v.                              )
                                )
                                )
TIM BOWERS and TYLER BOWERS,    )
                                )
        Defendants.             )
                                )
                                )

**          **          **          **          **

This action is before the Court based on Plaintiffs' Motion for Summary Judgment. [Record No. 34]. Defendants have responded [Record No. 35], and Plaintiffs have replied. [Record No. 36]. This matter is ripe for decision.

**I.    FACTUAL BACKGROUND**

Plaintiffs Casey Wasserman Living Trust under Declaration of Trust dated June 29, 1999, by its trustee, Casey Wasserman ("Wasserman") and Wasserman Media Group LLC ("WMG") seek summary judgment and have submitted the following materials in support of the motion: excerpts from Defendant Tim Bowers' Deposition, Defendants Tim and Tyler Bowers discovery responses, the affidavit of WMG Executive Director for Motorsports Jimmy Button, the

Management Agreement entered into by WMG and Tim and Tyler Bowers, and loan documents pertaining to a Motor Coach procured by the defendants and guaranteed by the plaintiffs. [Record 34-1 to -9]. Defendants Tim and Tyler Bowers ("the Bowers") filed a Response to Plaintiff's Motion without any supporting documents. Plaintiffs filed a Reply to Defendants response reiterating their arguments and praying for relief.

The Bowers entered into a Management Agreement on April 15, 2004, with The Familie, LLC, a sports agency acquired by WMG. [Record No. 37-1, para. 1, 34]. This agreement terminated September 11, 2008. *Id.* The written agreement required the Bowers to pay a commission ranging anywhere from 5% to 10% of Tyler Bowers' gross income from sponsorships inside and outside of the motorcycle industry based on a sliding scale. [Record No. 34-6, para. 4. a.-c.]. At all times throughout the contract with WMG, Tyler Bowers was a minor. [Record No. 34-4, Interrogatory No. 3]. Based on materials supporting their motion for summary judgment, Plaintiffs aver that they never received the commission on five different occasions in which they were entitled to payment. [Record No. 37-1, para. 26]. As a result, Plaintiffs believe they are entitled to 10% of $45,333.32 in earnings during the period covered by the Management Agreement or $4,533.33. [Record No. 37-1, para. 24].

Plaintiffs also aver the Bowers owe them $169,507.48 for expenses related to the insurance of a motor coach and paying off a loan used to purchase said motor coach. [Record No. 37-1, para. 31-33]. While Plaintiffs submitted a written loan agreement with City National Bank ("CNB") to buy the Motor Coach taken out in Tim Bowers' name and listing Plaintiffs as the guarantors, Plaintiffs offer no proof of any written agreement to pay back advances used to pay off the loan for the motor coach. [Record No. 34-7]. Tim Bowers admits he owes Plaintiffs $3,483.88 for the money used to insure the Motor Coach. [Record No. 34-3, RFA No. 11]. Plaintiffs aver they made payments on the loan between June 2005 and May 2008 amounting to $221,516.81 on behalf of the defendants, eventually selling the motor coach for $60,000. [Record No. 34-5, para. 24]. Plaintiffs aver they spent $4,506.79 in expenses while selling the vehicle. [Record No. 34-5, para. 24]. Plaintiffs, therefore, argue they are due an additional $169,507.48 in damages relating to the motor coach.

## II.  APPLICABLE STANDARD OF REVIEW

The standard for summary judgment mirrors the standard for directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. The Court, however, does not have a duty to scour the record for evidence of a genuine issue

of material fact and the "nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Poss v. Morris* (In re *Morris*), 260 F.3d 654, 665 (6th Cir. 2001) (citation omitted). The defendant's inadequate response, however, does not guarantee summary judgment and this Court must look to the movant's submissions to insure the lack of a dispute regarding material facts. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991); *See also Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000).

The defendants have not cited any evidence in the record in support of their response. [Record No. 35]. Nor did the defendants file any affidavits or exhibits with their response to Plaintiffs' Motion for Summary Judgment. *Id.* Federal Rule 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate be entered against the party.

Fed. R. Civ. P. 56(e)(2). Thus, this Court will consider the facts as laid out by Plaintiffs in their Motion for Summary Judgment and supporting documents as undisputed, insofar as the record actually provides for the facts set forth by Plaintiffs, and base its decision on the record cited therewith.

5

## III. DISCUSSION

### A.  Two distinct contracts are at issue.

In their Complaint, the plaintiffs aver that the defendants breached two distinct contracts.  The first alleged contract is an oral agreement made by the defendants to repay the plaintiffs for an advance used to make payments on a promissory note owed to CNB as well as insurance payments and other expenses related to a motor coach.  [Record No. 37-1, paras. 11-12].  The second contract is a written contract for the representation of Tyler Bowers.  [Record No. 37-1, para. 1].  The Court will address the alleged breach of each of these agreements separately.

Plaintiffs aver in their Complaint and argue in their Motion for Summary Judgment alternative theories of recovery against both defendants.  [Record No. 34-1]; [Record No. 1](arguing theories of indemnity, promissory estoppel and unjust enrichment against both defendants should this Court find a contract does not exist).

### B.  California law will apply to the payments made with regard to the motor coach and the representation of Tyler Bowers.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state in which it sits, in this case Kentucky.  *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000).  In doing so, the Sixth Circuit has interpreted Kentucky law to apply the test from Restatement (Second) of Conflict of Laws § 187 to determine which state's law will apply

when the parties have written a choice-of-law provision into the contract. *Id.* at 397. Thus, "the parties' choice of law should be honored unless (1) 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,' or (2) 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest.'" *Id.* at 398 (quoting Restatement (Second) of Conflict of Laws § 187 (1971)).

In this case, the Promissory Note signed by Tim Bowers and the Consumer Guaranty signed by Plaintiff Casey Wasserman both contained provisions requiring the documents "be governed and interpreted in accordance with federal law and the laws of the State of California."[1] [Record No. 34-7, WMG-0061, WMG-0066]. Furthermore, the Management Agreement by the Bowers specifically contains a provision that states that "[t]his Agreement shall be construed in accordance with the laws of the state of California

---

[1] Plaintiffs do not argue in their Motion for Summary Judgment that the Bowers breached this agreement. [Record 34-1, at 10]. Rather, Plaintiffs argue the Bowers breached an oral "agreement to repay all Motor Coach expenses." *Id.* This Court, however, believes since the repayment agreement involves a Consumer Guaranty and Promissory Note, both governed by California law, that any breaches arising directly out of the potential breach of those original contracts should also be governed by California law. Notably, however, Kentucky law has similar elements to a breach of contract claim. *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952) ("To state a cause of action ex contractu, it is necessary to state the contract, the breach and the facts which show the loss or damage by reason of the breach.")

7

without regard to its conflict of laws provisions." [Record No. 34-6, para. 9]. As a result, California law will govern unless one of the two exceptions listed above apply. To begin, California has a substantial relationship with Plaintiffs WMG and Wasserman in that both reside in California. [Record No. 34-1, at 9]. The only state that could have a materially greater interest, Kentucky, does not have a fundamental policy against enforcement of this contract. While the Sixth Circuit has noted a "provincial tendency in Kentucky choice-of-law rules," this case does not present a situation where this tendency would become a factor. *Wallace*, 223 F.3d at 391. As a result, California law will apply when construing these contracts and any potential claim for breach.

   **C.  Plaintiffs had voidable contracts, if any contracts at all, with Tyler Bowers.**

   California statute provides that, generally, "[a]ll persons are capable of contracting, *except minors*, persons of unsound mind, and persons deprived of civil rights," Cal. Civ. Code § 1556 (emphasis added), and sets out strict limitations on the conditions under which and the types of contracts into which a minor may even purport to enter, *see, e.g.,* Cal. Fam. Code §6701 (prohibiting minor from delegating any power to contract that he may have to another, making a contract involving real property, or making a contract involving personal property not in the minor's immediate possession). Even where exceptions to the disability of minority set forth in Cal. Civ. Code § 1556 exist, the California Family

Code provides that a minor has the power to disaffirm any such contract made until such time as he reaches the age of majority or for a reasonable time afterwards. Cal. Fam. Code §§ 6700, 6710.

Neither party disputes the fact that Tyler Bowers was a minor at the time his father signed the Consumer Guaranty with CNB regarding the motor coach or when Tyler Bowers signed the Management Agreement. [Record No. 36]; [Record No. 35-1, at 5]; [Record No. 34-4, Interrogatory No.3]; [Record No. 37-1, paras. 1, 12, 34].[2] Thus, Tyler Bowers was, at all relevant times, generally incapable of entering into a contract under California law. *See* Cal. Civ. Code § 1556. Plaintiffs have identified no exception to this general rule with respect to the contract averred in this case, but it is clear that, even if they could, Plaintiffs Wasserman and WMG could have made, at best, a voidable contract

---

[2] Plaintiffs argue Tyler Bowers' minority is an affirmative defense and that Tyler Bowers cannot raise this issue for the first time in his Response to their Motion for Summary Judgment. California law, however, requires the plaintiff prove the existence of a contract and a breach of that contract to show a cause of action for breach of contract. *Wall St. Network, Ltd. v. N.Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008). The question of Tyler Bowers' competency to enter into a contract based on his status as a minor falls within Plaintiffs burden to prove a contract existed and the resulting breach, i.e., it is part of Plaintiffs' *prima facie* case. The Sixth Circuit excludes defenses that "negate an element of the plaintiff's *prima facie* case" from the list of affirmative defenses and does not require a defendant to plead them under Federal Rules of Civil Procedure 8(c). *Ford Motor Co.*, 795 F.2d at 546 (citations omitted). Thus, Tyler Bowers did not waive his ability to call his liability on the contract in question based on his status as a minor when he did not assert it as an affirmative defense in his answer to the complaint.

with Tyler Bowers absent Tyler Bowers' acquiescence to the enforcement of the agreement, of which there is no evidence.[3] *See* Cal. Fam. Code §§ 6700, 6710. Accordingly, in the absence of an enforceable contract by and between Plaintiffs Wasserman and WMG and Tyler Bowers, this Court shall deny Plaintiffs' Motion for Summary Judgment for a breach of contract with regard to the Consumer Guaranty and other advances regarding the motor coach and the Management Agreement against Tyler Bowers.

Plaintiffs also claim that they are entitled to recover for unpaid commissions against Tyler Bowers based on the theories of promissory estoppel and quantum meruit. [Record No. 1, paras. 44-48; Record No. 34-1, at 16-17]. California courts, however, have held that the statutes restricting the ability of minors to form contracts also prohibit the alternative theories of recovery urged by Plaintiffs. As the California Court of Appeals explained, "It is the policy of the law to discourage adults from contracting with an infant and [adults] cannot complain if, as a consequence of their violation of the rule of conduct, they are injured by the

---

[3] Interestingly, California statute does not permit minors who "render services as a participant or player in a sport" to disaffirm certain contracts between them and their direct employers or their agents, but only where the contractual arrangement has been approved by the California Superior Court in the district "in which the minor resides or is employed or in which any party to the contract has its principal office in this state for the transaction of business." Cal. Fam. Code §§ 6750(a)(3), 6751(a). There is no evidence that Plaintiffs ever submitted the contract averred in this matter for such approval before a California court, and this statutory provision offers Plaintiffs no relief in this matter.

exercise of the right with which the law has purposely invested the latter, nor charge the infant in exercising the right is guilty of fraud."[4] *Flittner v. Equitable Life Assurance Soc'y*, 157 P. 630, 633-34 (Cal. Ct. App. 1916). This policy equally applies to any claim based on the theory of quantum meruit. *See Flittner v. Equitable life Assurance Soc'y*, 157 P. 630, 633-34 (Cal. Ct. App. 1916) (holding that a minor could disaffirm a contract for life insurance without requiring premium payments for the period of coverage prior to disaffirmance). It follows, therefore, that Plaintiffs' claims under the theories of promissory estoppel and quantum meruit also fail, and Plaintiffs' Motion for Summary Judgment on these alternative theories of recovery with regard to the Consumer Guaranty and other advances regarding the motor coach and the Management Agreement will be denied.

---

[4] An individual is estopped from disaffirming a contract entered into while a minor when that individual has acted in such a way, after reaching the age of majority, as to permit the theory to be raised. *Lee v. Hibernia Sav. & Loan Soc'y*, 177 P. 677, 678 (Cal. 1918) ("To hold otherwise and say that notwithstanding the express statutory declarations a minor under eighteen years of age is . . . estopped from disaffirming a [contract] would nullify and destroy the plain provisions of [California statute.]"); *see also Burnard v. Irigoyen*, 186 P.2d 417, 420 (Cal. 1947); *Dool v. First Nat'l Bank*, 290 P. 15, 18 (Cal. 1930); *Merry v. Garibaldi*, 119 P.2d 768, 771 (Cal. Ct. App. 1941). Plaintiffs have not shown Tyler Bowers has taken any actions that would ratify the Management Agreement or create a new agreement with Plaintiffs upon reaching the age of majority or even that he has, as of this time, reached the age of majority.

**D.  Plaintiffs had valid contract with Tim Bowers with regard to payments made on the motor coach and insurance.**

California courts require a plaintiff in a breach of contract claim to show "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. N.Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008); *accord Abdelhamid v. Fire Ins. Exchange*, 106 Cal. Rptr. 3d 26, 32-33 (Cal. Ct. App. 2010); *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 839 (Cal. Ct. App. 2009). This Court, therefore, can only grant Plaintiffs' Motion for Summary Judgment upon their showing they have has met all four elements such that no "reasonable jury could return a verdict for [Tim Bowers.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

California statute defines a loan as "a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed." Cal. Civ. Code § 1912. The Ninth Circuit, applying this statute, has recognized oral loan agreements as valid contracts. *Ceguerra v. Sec. of Health and Human Servs.*, 933 F.2d 735, 739 (9th Cir. 1991). In doing so, the court held the absence of a specific amount, interest provisions, due date or payment schedule would not require a court applying California law to find an oral loan agreement did not exist. *Id.* at 739-40. Rather, the Ninth Circuit held, "[a]t

the most, it shows that the parties had not agreed on every specific term." *Id.* at 739.

In this case, however, Plaintiffs have presented overwhelming evidence of an oral loan agreement. WEG Executive Director for Motorsports Jimmy Button states in an affidavit that WEG spent $221,516.81 to CNB on Tim Bowers' behalf for the motor coach between June 2005 and May 2008. [Record No. 34-5, para. 15, 24]. Furthermore, Tim Bowers does not dispute the existence of the agreement to repay Plaintiffs for the advances made on his behalf to CNB or the payments made by the Plaintiffs. [Record No. 37-1, para. 12]; [Record No. 34-3, Interrogatories Nos. 4,5]. Rather, Tim Bowers avers in discovery documents that Plaintiffs "did not advance 'all payments' that were due and payable to City National Bank." [Record No. 34-3, Interrogatory No. 6]. This is in keeping with the fact that the amount stated in the Button affidavit falls below the full amount of payments made during that time period as seen on the amortization schedule submitted in support of Plaintiffs' Motion for Summary Judgment. [Record No. 34-7, WMG-00063, WMG-00064]. The affidavit clearly states that the payment was made on Tim Bowers' behalf, as well as that of Tyler Bowers, as payment for the motor coach. [Record No. 34-5, para. 24]. This Court, therefore, finds that a oral loan existed between Plaintiffs and Tim Bowers and that Plaintiffs performed under this agreement paying $221,516.81 to CNB on Tim Bowers' behalf.

Thus, Tim Bowers had a duty to perform under the contract, but has produced no evidence showing any valid excuse for his non-performance or demonstrating that he has not breached his contract with the plaintiffs. In fact, Tim Bowers stated in his response to Plaintiffs' Motion for Summary Judgment that he "is not refusing repayment of said motor coach, [rather he] is disputing the amount due." [Record No. 35-1, at p. 5]. This Court, therefore, finds Tim Bowers in breach of his oral contract to repay Plaintiffs in the amount of $221.516.81 for advances made on a promissory note involving the motor coach.

The California Supreme Court has held, however, that wronged parties have a statutory duty to minimize damages requiring a person "to use ordinary care and diligence to prevent the enhancement of damages." *Guerrieri v. Severini*, 330 P.2d 635, 641 (Cal. 1958). Plaintiffs WMG and Wasserman acted reasonably in mitigating the damages caused by the breach by retrieving and selling the Motor Coach for $60,000. [Record No. 37-1, paras. 29-30]. In doing so, the undisputed facts show that the Plaintiffs spent "$4,506.79 in costs to retrieve and resell the Motor Coach." [Record No. 37-1, para. 32]. Thus, the amount of damages owed by Tim Bowers is reduced by the amount of money received by Plaintiffs in their attempts to mitigate the damages caused by the breach,

less their costs in doing so, or $55,493.21.[5]  Accordingly, this Court finds Tim Bowers' breach of the loan contract caused $166,023.60 damage to Plaintiffs based on his oral loan agreement with Plaintiffs and Tim Bowers is liable for that amount.

This Court also finds enough evidence exists to prove an oral loan agreement between Tim Bowers and Plaintiffs in regard to payments made for insurance on the motor coach.  Tim Bowers admitted that he owes Plaintiffs WMG and Wasserman for payments made by WMG and Wasserman to insure the motor coach.  [Record No. 37-1, para. 21]; [Record No. 34-3, RFA 15-17].  Furthermore, Tim Bowers admitted having a telephone conversation with Plaintiff WMG regarding the lapse in insurance and the advance from Plaintiff WMG to cover the insurance payment.  [Record No. 34-2, at 153:1-15].  Tim Bowers does not dispute this fact and admits he owes Plaintiffs $3483.88 for payments Plaintiffs made to insure the motor coach.  [Record No. 37-1, para 21]; [Record No. 34-3, RFA 14-17].

Thus, Tim Bowers has a duty to perform under this oral loan contract.  In the absence of any evidence showing any valid excuse for non-performance or facts demonstrating that he has not breached his contract with Plaintiffs, this Court finds Tim Bowers has breached an oral contract to repay Plaintiffs in the amount of

---

[5] This amount was determined by subtracting the expense to retrieve and resell the Motor Coach from the total amount received by the plaintiffs attempting to mitigate their damages caused by the breach.

$3,483.88 for advances made on a loan involving the insuring of the motor coach. Accordingly, this court shall grant Plaintiffs' Motion for Summary Judgment with regard to Tim Bowers' oral loan agreement with Plaintiff for payments made to CNB for the motor coach and payments made insuring the motor coach with appropriate prejudgment and post-judgment interest. *See infra* Part III.F.

**E. The Management Agreement was a valid contract between Plaintiffs and Tim Bowers, Plaintiffs performed under this contract and Tim Bowers breached.**

As previously stated, California courts require a plaintiff in a breach of contract claim to show "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. N.Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008); *accord Abdelhamid v. Fire Ins. Exchange*, 106 Cal. Rptr. 3d 26, 32-33 (Cal. Ct. App. 2010); *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 96 Cal. Rptr. 3d 813, 839 (Cal. Ct. App. 2009). Therefore, this court will only grant Plaintiffs' Motion for Summary Judgment if it proves all four elements such that no "reasonable jury could return a verdict for [Tim Bowers.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Tim Bowers does not dispute the existence of the Management Agreement nor does he dispute the authenticity of the contract submitted as Exhibit E to Plaintiff's Motion for Summary Judgment.

16

[Record No. 34-1, at 12]; [Record No. 34-6].  The contract includes the signature of Tim Bowers.  [Record No. 34-6].  This contract came into existence on August 16, 2004, and terminated September 11, 2008.  [Record No. 37-1, para 1, 34].  As a result, the Court finds a contract existed during this time period.

The Court again finds that the plaintiffs performed under the contract.  Tim Bowers has not disputed Plaintiff's performance under the contract in either his pleadings or responses to interrogatories submitted by Plaintiffs.  Furthermore, in response to interrogatories, Tyler Bowers stated that a member of the WMG team negotiated sponsorship agreements for him. [Record No. 34-4, Interrogatory No. 7].  As a result, Plaintiffs have met their burden in showing performance under the contract.

This Court also finds that Plaintiffs have shown a breach and resulting damage.  Plaintiffs have submitted an affidavit as well as responses to interrogatories in support of their Motion for Summary Judgment.  The facts as submitted show five sponsorship deals at issue: 1) 2007 One Industries, 2) 2007 Smith Optics, 3) 2007 Maxxis International, 4) 2007 Troy Racing, and 5) 2008 SHIFT. [Record No. 37-1, para. 23].

The Plaintiffs refer to an affidavit of Jimmy Button, WMG's Executive Director for Motorsports, in support of their Motion for Summary Judgment.  Mr. Button states in his affidavit that "Tyler earned at least $45,333.32 from sponsorship agreements for which

the Bowers failed to forward commissions as required by the Management Agreement." [Record No. 34-5, para. 9]. The Management Agreement requires that the Bowers pay 5-10% of gross income earned by Tyler Bowers from all sponsorships inside the motorcycle industry and 5-10% of gross income earned by Tyler Bowers from all sponsorships outside the motorcycle industry at the Plaintiffs' discretion. [Record No. 34-6, para 4.a.-c.]. Plaintiffs also state that Defendants never paid them the commission from the sponsorships listed above. [Record No. 37-1, paras. 25, 26]. Defendants provide the Court no evidence to dispute the above-stated facts.

Plaintiffs, therefore, state the damages arising from the sponsorships as 10% of the commissions earned by Tyler Bowers or $4,533.33. [Record No. 37-1, para. 24]. California statute states the measure of damages for breach of contract as "the amount which will compensate the party aggrieved for the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. California statute also requires damages be "clearly ascertainable in both their nature and origin" for a plaintiff to recover. Cal. Civ. Code § 3301. Thus, damages too remote, uncertain and/or speculative generally cannot be recovered. *Julian Petroleum Corp. v. Courtney Petroleum Co.*, 22 F.2d 360, 362 (9th Cir. 1927).

There is no dispute regarding the 2007 Smith Optics earnings of $5,000, the 2007 Maxxis earnings of $5,000, or the 2008 Yamaha of Troy June-July, Sept.-Oct. earnings of $13,333.32. [Record No. 34-3, RFA 11]. These earnings, in the sum of $23,333.32, properly fall within the scope of the Management Agreement and serve as a measure of damages which are neither too remote, too speculative, nor too uncertain to be recovered. *See Julien Petroleum Corp.*, 22 F.2d at 362.

As to the 2007 One Industries earnings of $2,000 and the 2007 SHIFT earnings of $20,000, Plaintiffs have not shown damages that are "clearly ascertainable in both their nature and origin." *See* Cal. Civ. Code § 3301. Plaintiffs rely on two responses to requests for admissions by the Bowerses to prove the earnings at issue. [Record No. 37-1, para. 23, 24]; [Record No. 34-3, RFA 11]; [Record No. 34-4, RFA 11]. In both responses, Tim and Tyler Bowers state these earnings belonged to the "Bookoo Ax Team." *Id.* Three riders, including Tyler Bowers, made up this team. [Record No. 34-3,RFA 11].

While the Management Agreement states Plaintiffs shall receive all gross income earned inside and outside the motorcycle industry by Tyler Bowers, it makes no requirements of the "Bookoo Ax Team," nor the other members of said team. [Record No. 34-6]. Plaintiffs also have not demonstrated the precise amount paid to Tyler Bowers for his activities as a member of the "Bookoo Ax Team." Thus, a

reasonable jury could return a verdict that would not award the entire amount alleged by Plaintiffs. The basis for these alleged damages remains too speculative and uncertain for this Court at this time based on the evidence presented. A genuine issue of material fact, therefore, exists solely as to the amount of earnings received by Tyler Bowers as part of the "Bookoo Ax Team."

Accordingly, the Court finds Tim Bowers is in breach of the Management Agreement entered into with Plaintiffs WMG and Wasserman in regard to Tyler Bowers' earnings in 2007 from Smith Optics and Maxxis, and in 2008 from Yamaha of Troy June-July, Sept.-Oct. totaling $23,333.32 and shall award damages of $2,333.33, with appropriate prejudgment and post-judgment interest. *See infra* Part III.F. As to the earnings in 2007 from One Industries and SHIFT, this Court finds a genuine issue of material fact exists and shall deny, in part, Plaintiff's Motion for Summary Judgment.

### F. Prejudgment interest and Post-judgment interest is awarded.

Plaintiffs have requested in their proposed order both prejudgment interest from May 14, 2009 through the date of entry of this judgment and post-judgment interest from the date of entry of this judgment until satisfied. [Record No. 34-8]. When determining the applicability of pre-judgment interest, a federal court sitting in diversity must apply the law of the forum state. *Rhea v. Massey-Ferguson*, *Inc.*, 767 F.2d 266, 270 (6th Cir. 1985)

(citations omitted). Kentucky law requires a court to award prejudgment interest when the damages qualify as liquidated damages. *Nucor Corp. v. GE Co.*, 812 S.W.2d 136, 141 (Ky. 1991). Kentucky further defines an award based on "a bill or note past due, an amount due on an open account or an unpaid fixed contract price" as examples of liquidated damages. *Id.* Therefore, this Court must award prejudgment interest at 8%, the maximum rate allowable under Kentucky statute. *Poundstone v. Patriot Coal Co.*, 485 F.3d 891, 903 (6th Cir. 2007) (citing KRS § 360.010; *Pursley v. Pursley*, 144 S.W.3d 820, 828 (Ky. 2004)). Federal law, however, mandates post-judgment interest, set "at a rate equal to the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," be applied to an award after entry of judgment. 28 U.S.C. 1961(a); *see also Gulf Oil Corp. v. Kruer*, 842 F.2d 331, 331 (6th Cir. 1988) (citing 28 U.S.C. 1961(a)).

The damages averred by the Plaintiff all involve unpaid amounts fixed at either a percentage of earnings received or the amount of advances used to pay off other debts. *See supra* Part III.B-C. These all qualify as liquidated damages under Kentucky law. *See GE Co.*, 812 S.W.2d at 141. This Court, therefore, shall award appropriate prejudgment interest and post-judgment interest for all damages awarded in this memorandum, opinion, and order.

## IV. CONCLUSION

In conclusion, this Court shall grant, in part, Plaintiffs' Motion for Summary Judgment and deny, in part, Plaintiffs' Motion for Summary Judgment. The Court shall grant Plaintiffs appropriate damages from Tim Bowers arising from advances made to CNB on Tim Bowers' behalf for payment on the loan for the motor coach and insurance for the motor coach as well as appropriate damages arising from unpaid commissions from the Management Agreement that have been shown to be neither too remote, too speculative, nor too uncertain to be recovered as required by California law.

Accordingly, **IT IS ORDERED:**

(1)  that Plaintiffs' Motion for Summary Judgment [Record No. 34] is, **GRANTED IN PART** and **DENIED IN PART** as set forth above; and

(2)  that, upon the Court's own motion, Plaintiffs shall **SHOW CAUSE,** on or before September 30, 2010, why their claims against Tyler Bowers should not be dismissed with prejudice for the reasons set forth in this Memorandum Opinion and Order.

This the 20th day of September, 2010.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge